FILED
U.S. District Court
District of Kansas
11/17/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**LASHELL LEE MITCHELL,**

**Plaintiff,**

**v.** **CASE NO. 26-3352-JWL**

**SHAWNEE COUNTY
SHERIFF'S DEPARTMNET, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER
TO SHOW CAUSE**

Plaintiff Lashell Lee Mitchell brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. Plaintiff is detained at the Shawnee County Jail ("SCJ") in Topeka, Kansas. For the reasons discussed below, Plaintiff is ordered to show cause why her Amended Complaint should not be dismissed.

## I. Nature of the Matter before the Court

Plaintiff filed a complaint (Doc. 1) and fourteen (14) motions (Docs. 3-15) on September 23, 2026. She then filed an amended complaint ("AC"; Doc. 19) on October 19, 2026, and two more motions (Docs. 21 and 23) on November 16, 2026. Because an amended complaint completely supercedes the original complaint, the Court has treated the AC as the operative complaint.

Plaintiff alleges that since arriving at the SCJ on November 3, 2026, she has been unable to receive appropriate medical care. Plaintiff explains that she was involved in a police pursuit that ended with the car she was in striking a tree. (Doc. 19, at 3.) She alleges the car was going 50-60 miles per hour and states that her head spider-webbed the windshield. *Id.* She was taken to

Stormont Vail Hospital and released to Shawnee County custody with paperwork allegedly showing codes for "alertness lost," "stupor to coma," and "death possible." *Id.* at 4. Plaintiff also alleges the hospital records show moderate spondylosis of her cervical spine and a small area of a lung collapsed. *Id.*

Plaintiff was seen by a nurse at the SCJ on November 10, 2025. *Id.* The nurse said soreness after an auto accident is to be expected and gave Plaintiff ibuprofen. *Id.* Plaintiff alleges that she should have been seen by a doctor. *Id.* Plaintiff asserts that "never in the whole 46 days [she was incarcerated] was I seen by physician to do my aftercare follow-up visit." *Id.* at 4, 7. She states, "I could still have problems and I wouldn't know." *Id.*

Plaintiff complains that she was moved out of the medical unit to L-module and then South Annex after only 8 hours. *Id.* She further complains of having to carry her mattress and bedding, putting more strain on her back. *Id.* She alleges she went through "extreme pain" and "a lot of mental anguish" and was "sleep walking" in a "stupor coma." *Id*. at 4-5.

Plaintiff brings claims for medical negligence/malpractice, violation of the Eighth and Fourteenth Amendments, and violation of the Americans with Disabilities Act.

Plaintiff names the following defendants: the Shawnee County Sheriff's Department; the Shawnee County Department of Corrections; VitalCore Health Strategies, LLC; the Secretary of Corrections; Brian Cole, Director of the Shawnee County Department of Corrections; Leah Southard, Director of Medical Staffing; and Karen Hammond, Health Care Provider/Physician.

Plaintiff seeks compensatory and punitive damages. *Id*. at 12.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).

The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did

it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

After reviewing Plaintiff's AC (Doc. 19), the Court finds that the AC is subject to dismissal for the following reasons.

### A. Problems with Defendants

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a *person* acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted) (emphasis added); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).

The Shawnee County Sheriff's Department and the Shawnee County Department of Corrections are not proper defendants to a § 1983 action. These defendants are subject to dismissal, as "'police departments . . . are not suable entities under § 1983, because they lack legal identities apart from the municipality.'" *Young v. City of Albuquerque*, 77 F. Supp. 3d 1154, 1186 (D.N.M. 2014) (quoting *Ketchum v. Albuquerque Police Dep't*, 958 F.2d 381, 1992 WL 51481, at *2 (10th Cir. March 12, 1992)).

The Secretary of Corrections, Brian Cole, and Leah Southard are also subject to dismissal. Plaintiff has not described how any of these defendants are involved in the alleged improper conduct. Federal Rule of Civil Procedure 8 requires that a complaint "contain . . . a short and plain statement of the claim showing that [the plaintiff] is entitled to relief." The purpose of Rule 8 "is 'to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are proved, that the claimant has a legal right to relief.'" *Monument Builders of Greater Kan. City, Inc. v. Am. Cemetery Ass'n of Kan.*, 891 F.2d 1473, 1480 (10th Cir. 1998) (citation omitted). "To state a claim, a complaint 'must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (quoting *Robbins*, 519 F.3d at 1250). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). Plaintiff must explain what each defendant did to her, when the defendant

did it, how it harmed her, and what specific legal right she believes that defendant violated. *See Nasious*, 492 F.3d at 1163 (10th Cir. 2007).

Last, Vital Core is subject to dismissal. In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to . . . § 1983 suits." *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation."). Plaintiff must allege facts showing a policy or a custom of Vital Core that caused her injury. Plaintiff has failed to allege such facts.

Plaintiff must show good cause why her claims against Defendants Shawnee County Sheriff's Department, Shawnee County Department of Corrections, Secretary of Corrections, Brial Cole, and Leah Southard should not be dismissed for failure to state a claim.

**B. Failure to State a Denial of Medical Care Claim**

The AC asserts the violation of Plaintiff's constitutional right to adequate medical care under either the Eighth Amendment—if Plaintiff is in the SCJ because of a criminal conviction—or the Fourteenth Amendment—if Plaintiff is in the SCJ as a pretrial detainee. Under either amendment, the test for denial of medical care, or deliberate indifference to a serious medical need, is the same. *See Estate of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1262 (10th Cir. 2022) ("'The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care that the Eighth Amendment requires for convicted inmates.' [Citation omitted.]").

The test for unconstitutional denial of medical treatment or deliberate indifference to a serious medical need involves two components, one objective and one subjective. *Paugh v. Uintah County*, 47 F.4th 1139, 1154 (10th Cir. 2022), *cert. denied* June 26, 2023.

> The objective component focuses on the "seriousness of the plaintiff's alleged harm," and the subjective component focuses on 'the mental state of the defendant with respect to the risk of that harm."
>
> . . . .
>
> To satisfy the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self* [*v. Crum*], 439 F.3d [1227,] 1230 [(10th Cir. 2006)] (quoting *Farmer* [*v. Brennan*], 511 U.S. [825,] 834 [(1994)]). Generally, a medical need qualifies as "sufficiently serious" if it "has been diagnosed by a physician as mandating treatment" or if it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock* [*v. Colo.*], 218 F.3d [1205,] 1209 [(10th Cir. 2000)] (citation omitted).

*Paugh*, 47 F.4th at 1154-55. In addition, "[m]edical delays can be sufficiently serious if they cause substantial harm, such as 'permanent loss[] or considerable pain.'" *Lance v. Morris*, 985 F.3d 787, 793 (10th Cir. 2021) (citations omitted).

To satisfy the subjective part of the test, Plaintiff must show that each defendant "was aware of a substantial risk of serious harm and chose to disregard that risk." *Id.* at 794. The Tenth Circuit has explained that there are two "theories" under which a plaintiff can satisfy the subjective component of this test: the "failure to properly treat theory" and the "gatekeeper theory." *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023). The first occurs when a medical professional fails to properly treat a serious medical condition. *Paugh*, 47 F.4th at 1154.

The second theory occurs when an individual referred to as "a gatekeeper" "'prevents an inmate from receiving treatment or den[ies] him access to someone capable of evaluating the inmate's need for treatment.'" *Id.* (quoting *Sealock*, 218 F.3d at 1211). "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). Although "this case may look different" once the relevant defendant has the "'opportunity to clarify and explain [his or her] actions,'" at this point the Court must decide "'only whether [Plaintiff] has alleged sufficient facts to support a claim.'" *See Lucas*, 58 F.4th at 1142 (citations omitted).

The problem with the AC is that Plaintiff has not alleged specific facts that show either part of the test. First, she has not shown that she had a medical need that was "sufficiently serious" to constitute a deprivation of constitutional dimension. Based on Plaintiff's allegations, it sounds like she had a serious medical need when she was admitted to the hospital, but then she was

discharged with only a general instruction to follow up with a healthcare provider. This is the opposite of a medical need being diagnosed by a physician as mandating treatment or so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

Plaintiff has also not alleged specific facts showing the second part of the test, that a named defendant knew of and disregarded an excessive risk to Plaintiff's health. Again, Plaintiff's allegations indicate that the hospital discharged her with only general instructions to follow up. This did not give any defendant reason to know of an excessive risk to Plaintiff. Also, Plaintiff states that she was kept in the medical unit for about 8 hours upon arriving at the SCJ.

Plaintiff makes much of the allegation that she was never seen by the SCJ doctor, Dr. Hammond, but instead only seen by a nurse or other healthcare provider. There is no constitutional requirement that if care is needed, a doctor must provide it.

In addition, a disagreement between a healthcare provider and a prisoner over the proper diagnosis or course of treatment is not a constitutional violation. A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Finally, Plaintiff alleges that the defendants were negligent or committed medical malpractice. While that may be true, negligent conduct does not state a claim under § 1983. The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

**C. Failure to State an ADA Claim**

In addition to the Eighth and Fourteenth Amendments, Plaintiff mentions the Americans with Disabilities Act ("ADA"). The ADA prohibits discrimination by government entities on the basis of disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisons are within Title II's definition of "public entities." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10 (1998). Moreover, "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,'" and "[t]he text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons." *Williams v. Colo. Dep't of Corr.*, 2022 WL 3681255, at *3 (10th Cir. 2022) (quoting *Yeskey*, 524 U.S. at 210).

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is 'a qualified individual with a disability'; (2) he 'was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312 (10th Cir. 2021) (quoting *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)). The inability to prove any one of these elements precludes an ADA claim. *Id.* "Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V.*, 813 F.3d at 1295.

Plaintiff alleges generally in the AC that she was denied adequate medical care. She does not allege that she was denied care based on a disability or provide any information as to what her

disability is. Plaintiff has not shown that she is "a qualified individual with a disability."

The Supreme Court has held that "medical care" is one of the "services, programs, or activities" covered by the ADA. *See United States v. Georgia*, 546 U.S. 151, 126 S. Ct. 877, 881 (2006) (stating that the "deliberate refusal of prison officials to accommodate [the plaintiff's] disability-related needs in such fundamentals as . . . medical care . . . constituted 'exclu[sion] from participation in or . . . den[ial of] the benefits of' the prison's 'services, programs, or activities' " (quoting 42 U.S.C. § 12132)). "However, courts have differentiated ADA claims based on negligent medical care from those based on discriminatory medical care." *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 284 (1st Cir. 2006) (citations omitted).

In *Sullivan*, the Tenth Circuit affirmed the district court's finding that the plaintiff could not premise his ADA claim on the denial of treatment because he would not be "otherwise qualified" for treatment absent his medical condition. *Sullivan v. Univ. of Kansas Hospital Auth.*, 844 F. App'x 43, 48 (10th Cir. 2021) (unpublished). The Tenth Circuit stated that:

> As we explained in *Johnson ex rel. Johnson v. Thompson*, 971 F.2d 1487, 1493 (10th Cir. 1992), when a plaintiff claims disability discrimination based on the failure to receive treatment for a medical condition, "[s]uch a plaintiff must prove that he or she was discriminatorily denied medical treatment because of [a medical condition] and, at the same time, must prove that, in spite of the [medical condition], he or she was 'otherwise qualified' to receive the denied medical treatment." This presents a dichotomy, however, because "if such a person were not so handicapped, he or she would not need the medical treatment and thus would not 'otherwise qualify' for treatment." *Id.*
>
> Here, the district court recognized that Mr. Sullivan could not premise his claims on the denial of treatment because he would not be "otherwise qualified" for treatment absent his medical condition.
>
> * * * *
>
> Last, Mr. Sullivan suggests the district court erred in rejecting his medical malpractice claims under the ADA. The claims are based

> on his healthcare providers' alleged failure to properly diagnose and adequately treat his medical condition. The district court correctly observed, however, that these types of "purely medical decisions . . . do not ordinarily fall within the scope of the ADA or the Rehabilitation Act," *Fitzgerald*, 403 F.3d at 1144. The district court therefore correctly dismissed these claims.

*Id*. at 48–49.

Other circuits have reached the same conclusion. *See Wenzke v. Munoz*, 800 F. App'x 76, 79 (3d Cir. 2020) (affirming dismissal of the plaintiff's ADA claims because a lawsuit under the ADA cannot be based on medical treatment decisions); *Grant v. Alperovich*, 703 F. App'x 556, 557 (9th Cir. 2017) (affirming the district court's grant of summary judgment because the "assertion of discrimination in medical treatment decisions amounted to a claim of medical malpractice, rather than a claim of discrimination governed by the ADA"); *McGugan v. Aldana-Bernier*, 752 F.3d 224, 231–32 (2d Cir. 2014) ("[A] doctor may refuse to prescribe a particular treatment, which the disabled patient has requested, because of the doctor's assessment (based on an appraisal of the patient's medical condition) that the treatment would be harmful. The doctor's refusal is not discrimination in violation of the statute, even if the doctor's medical analysis is flawed. Such a decision may be malpractice, but it is not discrimination."); *Deweese v. Munyan*, 2021 WL 729097, at *4 (E.D. Ark. 2021) (stating that the Eighth Circuit has repeatedly held that claims under the ADA or Rehabilitation Act cannot be based on medical treatment decisions, including claims regarding the failure to give appropriate medication) (citations omitted).

Plaintiff should show good cause why her claim under the ADA should not be dismissed for failure to allege a disability and based on the Tenth Circuit's reasoning in *Sullivan*.

**D. Request for Relief**

Plaintiff seeks to recover compensatory damages for the alleged constitutional violations. However, her claim for damages is barred. Section 1997e(e) provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). This provision bars a prisoner from bringing a claim for compensatory damages without a prior showing of a physical injury. *See Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999). Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002) (applying §1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Plaintiff's request for damages is subject to dismissal as barred by 42 U.S.C. § 1997e(e) because she has not described any physical injury that was caused by the alleged deprivations of her constitutional rights.

Plaintiff also seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiff presents no plausible basis for a claim of punitive damages because she alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.

Plaintiff's requests for compensatory and punitive damages are subject to dismissal.

**E. Motions**

**1. Motion for Appointment of Counsel (Doc. 3)**

Plaintiff asks the Court to appoint counsel to represent her in this matter. The Court has considered Plaintiff's motion. There is no constitutional right to appointment of counsel in a civil case. *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995). "Rather, a court has discretion to *request* an attorney to represent a litigant who is proceeding in forma pauperis" in a civil case.

*Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006) (emphasis added) (citing 28 U.S.C. § 1915(e)(1)). In other words, if this motion is granted, it means only that the Court will request that an attorney volunteer to be appointed to represent Plaintiff at no cost to Plaintiff. The Court cannot guarantee that an attorney will volunteer. *See Rachel v. Troutt*, 820 F.3d 390, 396 (10th Cir. 2016) ("Courts are not authorized to appoint counsel in § 1983 cases; instead, courts can only 'request' an attorney to take a case.").

The decision whether to appoint counsel—meaning to request counsel to provide representation at no cost to Plaintiff—in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to request volunteer counsel for Plaintiff, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim against a named defendant; (2) the issues are not overly complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice to refiling the motion if Plaintiff's AC survives screening.

**2. Motions for Discovery (Docs. 4, 5, 6, and 7)**

Plaintiff seeks to have various entities produce records and other potential evidence. Plaintiff's AC has not passed the screening stage, and to the extent Plaintiff is seeking discovery at this stage in the proceedings, the motions are denied without prejudice as premature.

**3. Motions to Notice of Medical Malpractice (Docs. 8-15)**

These filings appear to be intended to provide notice to various entities that Plaintiff "is believed to be a victim of medical malpractice and negligence medical malpractice." (Doc. 8, at 2, for example.) Plaintiff does not ask for the Court to take any action, other than "asking Judge hear claim and restitution for injuries and the ongoing affects and side effects that the negligence and medical malpractice has caused." *Id.* This is generally the relief that she seeks in this lawsuit.

For this reason, the "motions" are unnecessary. Moreover, notice of Plaintiff's claims is provided to entities named as defendants when and if the AC survives screening and the defendants are served. The motions are denied.

**4. Motion for Relief of Summary Judgment (Doc. 21)**

Plaintiff asks for $25 million "on the grounds of all the negligences and recklessness outrageous way that many of defendants had performed." (Doc. 21, at 2.) Plaintiff is seeking relief she might obtain if her AC survives screening. The motion is premature and is denied.

**5. Motion to Appeal in forma pauperis and Reconsider (Doc. 23)**

Plaintiff is asking the Court to reconsider its Order of September 23, 2026 (Doc. 16), granting her leave to proceed in forma pauperis. In the Order, the Court stated, "Notwithstanding this grant of leave, plaintiff is required to pay the full amount of the filing fee and is hereby assessed $350.00. Plaintiff is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." *Id.* Plaintiff seems to be seeking a complete waiver

of the filing fee based on her indigence. (Doc. 23, at 2.)

Plaintiff's motion is denied. Section 1915(b)(1) provides that "if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner *shall be required* to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1) (emphasis added). Plaintiff has provided no factual or legal basis for this Court to relieve her of this statutory obligation. The mandatory language of the statute indicates that the Court lacks the authority to excuse Plaintiff from paying the full filing fee.

**IV. Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why the claims and defendants discussed above should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the Court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (26-3352-JWL) at the top of the first page of his amended complaint, and she must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where she must allege facts describing the

unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

Plaintiff is given time to file a complete and proper amended complaint in which she concisely (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient amended Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **December 17, 2026,** in which to show good cause, in writing, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein or to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED** that Plaintiff's pending motions (Docs. 3-15, 21, and 23) are **denied**.

The clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated November 17, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**